## In re TYSOR-CHEATHAM MERCANTILE CO.

### (District Court, S. D. Georgia, N. E. D.   March 23, 1910.)

BANKRUPTCY (§ 177*)—MORTGAGES—LIEN.

Where a mortgage by the bankrupt, executed January 26, 1907, when the bankrupt began business, was not recorded at the time, but proof of execution was made October 23, 1907, and the instrument recorded less than three months before bankruptcy, it was not a valid mortgage as against the mortgagee's other creditors, and the holder was, therefore, not entitled to payment of the proceeds of the property described therein by the referee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 177.*]

In the matter of the bankruptcy of the Tysor-Cheatham Mercantile Company. On petition to review findings of a referee denying the validity of a mortgage in intervention proceedings by W. R. Bean, mortgagee. Affirmed.

C. W. Smith and E. P. Davis, for intervener.
Archibald Blackshear, for trustee.

SPEER, District Judge. The question in this case arises on the following facts: The bankrupt, the Tysor-Cheatham Mercantile Company, desired to enter business at Warrenton, Ga. It was necessary to procure money, and this was done from a brother-in-law of one of the company. Mr. W. R. Bean. To secure the sum, $4,000, an instrument

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was executed, which is attached to the proceedings. This is a promissory note, and added thereto are words sufficient to create a mortgage on one double brick storehouse and lot in the town of Warrenton, Warren county, Ga. There is the usual waiver of homestead. This is signed by the Tysor-Cheatham Mercantile Company, by G. D. Tysor and R. A. Cheatham, and was executed in the presence of C. M. Smith, clerk of the superior court, and E. P. Davis, notary public, Warren county.

This was on January 26, 1907. The paper was not recorded at the time; but on October 23, 1907, the clerk of the superior court of Warren county certifies as follows:

"R. A. Cheatham, acting for the Tysor-Cheatham Mercantile Co., and R. A. Cheatham and G. D. Tysor, each acting individually, came before me on this 23d day of October, 1907, acknowledging the within mortgage to be the mortgage of the Tysor-Cheatham Mercantile Company,"

—and that it was duly signed, etc. Then there is a certificate of the clerk that the paper was filed for record at 5 o'clock p. m. October 2, 1907, and recorded on October 12, 1907.

This was within less than three months of bankruptcy. Bankruptcy intervened in January, 1908.

Now, in the distribution of the assets, this instrument is presented to the referee as a mortgage, demanding the proceeds of the property described therein. Its validity as a mortgage as against the rights of general creditors is contested by the trustee, and after the hearing of testimony and the argument of counsel the referee holds that it is not a valid mortgage as against other creditors.

·It seems to me that the question is not open, at least in the Fifth circuit. It is in all respects equivalent to Clayton v. Exchange Bank of Macon, 121 Fed. 630, 57 C. C. A. 656, 10 Am. Bankr. Rep. 173. There this court held generally with the contentions of counsel for the petition for review here, but was reversed by the majority of the court. It is true that the clear-sighted and sagacious judge, Hon. A. P. McCormick, dissented; but, unhappily for the view which this court had taken, two of the judges, not wanting in clearness and sagacity, took the other view. That view is the opinion of the appellate court, and I cannot well see how a case could be more in point as it relates to the facts here.

In the opinion of Judge Shelby it was declared:

"Up to the very moment that Josephson filed his petition in bankruptcy, both he and the bank, so far as actions could speak—and they often speak more forcibly than words—asserted that the property of the former was not mortgaged. Both seemingly profited by this course. It seems to us inequitable to permit the bank at the last moment to produce the mortgages, and contradict the assertions made by the conduct of both the mortgagor and the mortgagee, to the injury of those who were misled and deceived. It has been said that, if one is silent when he should speak, he will not be permitted to speak when he should be silent; and is it not also just to say that if one, for improper motive, refuses to claim openly under a mortgage when duty to others requires him to do so, he shall not be permitted to assert such claim when justice to others forbids?"

Now, is it not true, in view of that reasoning, that if the general creditors—the unsecured creditors of the mercantile corporation here

—knew at the very moment of its organization it had conveyed away by mortgage, not only the storehouse in which the business was to be conducted; that it had no other property, that all credit would have been refused? I think there can be scarcely a doubt of it. And if the paper is treated as a mortgage, so far as the rights of subsequent creditors are concerned, that mortgage ought to have been put upon the record, so that they would have the constructive notice of its existence. This seems wise; otherwise, men might be induced to part with their values to irresponsible purchasers, when, if the instruments had been properly registered, they could examine the records in the clerk's office and ascertain whether or not the would-be purchaser had that degree of solvency which he claimed to have.

The conclusion I have reached is that the finding of the referee must be sustained.